# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| | | |
|---|---|---|
| **MICHAEL SAMUEL**<br>michael@samuelandstein.com | March 8, 2018 | ADMITTED IN<br>NY |

**Via ECF**

Hon. Sanket J. Bulsara, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza
Courtroom 324N
Brooklyn, NY 11201

*Re: Velez v. Sabor Toribio Restaurant, Inc. d/b/a Sabor Toribio*
**Case No. 1:16-cv-06117-ENV-SJB**

Dear Judge Bulsara:

We represent Plaintiff in the above-captioned matter and submit this letter to the Court with the approval of Defendants, for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter, and the parties submit that the Court should approve the Settlement Agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter.[1]

Background

Plaintiff was employed by Defendant Sabor Toribio Restaurant, Inc. as a cook, from approximately November 18, 2012 through November 1, 2016. Plaintiff commenced this action on November 3, 2016 by filing a Complaint against Defendants alleging, *inter alia*, unpaid minimum[2] and overtime wages, unpaid spread-of-hours premiums, and failure to provide wage notice and wage statements. Defendants filed their answer on December 28, 2016. The parties conducted thorough document discovery, and on April 5, 2017, Magistrate Judge Scanlon referred the case to mediation. Mediation was unsuccessful, and Defense Counsel moved to withdraw from the case on the grounds of their clients' inability to pay Counsel's fees. The motion to withdraw was granted on December 5, 2017. The restaurant operated by Defendant Sabor Toribio Restaurant, Inc. closed in approximately late 2017. Defendants asserted that the business was no longer financially viable.

---

[1] A copy of the Settlement Agreement is attached hereto.

[2] Although Plaintiff's wages complied with the federal minimum wage, he was not paid in accordance with the statutory rate prescribed by the New York Labor Law.

Settlement Agreement

The parties engaged in extensive negotiations and document exchange, which included the provision by Defendants to Plaintiff's counsel of Defendants' tax returns, selected bank statements for Defendants, and affidavits from Defendants' employees. There are significant factual disputes in this case. Defendants took the position that Plaintiff was not entitled to any overtime compensation because he generally did not perform services for Defendant exceeding 40 hours in any workweek, and that he was compensated properly if he did work overtime. Moreover, Defendants and their employees stated under oath[3] that Plaintiff's regular hours did not exceed 40 per week, and that Plaintiff would arrive at work in a drunk state, or on drugs, and was often sent home for being unable to work.

In fashioning the settlement, the parties have considered the financial position of Defendants, the fact that Defendants have been unable to pay for legal counsel since approximately March 2017, and the fact that Defendants' business closed down. Moreover, the individual Defendants have represented that they do not own real property or other assets, which would potentially impair Plaintiff's ability to enforce any judgment that might be assessed against Defendants after a full legal proceeding.

As the Court can see from the Settlement Agreement submitted herewith, the parties agreed to settle Plaintiff's claims against Defendants for a total of **Twenty Thousand Dollars ($20,000.00)**, inclusive of legal fees and costs. While the final settlement amount is less than Plaintiffs' maximum possible recovery, we believe this to be a fair resolution of this matter, due to strong *bona fide* disputes about the value of Plaintiff's claims, Plaintiff's apparent lack of credibility to his coworkers, Defendants' precarious financial position, and the risks attendant with continuing the litigation.

By settling now, Plaintiff ensures that he will get a part of what he could potentially recover, and he does so without having to wait through months of likely fruitless discovery, then having to face the uncertainty of trial and the possibility that at the end, Defendants will be unable to satisfy the judgment.

FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a

---

[3] Defendants produced affidavits from Plaintiff's coworkers during document discovery.

history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co*., 2014 U.S. Dist. LEXIS 135635, at *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted). Applying these factors, Plaintiff suggests that they weigh strongly in favor of settlement approval.

In light of the uncertainties associated with establishing Plaintiff's hours worked, as well as Plaintiff's desire to avoid future legal proceedings, the settlement amount reached here is reasonable. *See Beckert v. Ronirubinov,* 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (holding a settlement of approximately 25% of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation). The settlement will also enable the parties to avoid the burdens and expenses of trial, as well as the litigation risks that always accompany same.

Courts consider settlements fair and reasonable when, as is the case here, they consider the potential risks of litigation. *See e.g.*, *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, at *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, *inter alia*, it was a "compromise over contested issues"…"in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc*., 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law."). In this case, counsel for Plaintiff are experienced wage-and-hour litigators, and they exchanged multiple demands and offers of settlement with Defendants before settling on the terms of this proposed settlement. Moreover, prior to entering into the settlement agreement, Plaintiff thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel and of the individual Defendants themselves, that the terms were a fair and reasonable assessment of their respective risks.

Other factors present do not weigh against a settlement. This matter has not been conditionally certified as a collective action; thus, the settlement of this action will have no impact on any other employees or their rights. Plaintiff is no longer employed by Defendants so there is no likelihood that Plaintiffs' circumstances will recur. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Hon. Sanket J. Bulsara, U.S.M.J.
March 8, 2018
Page 4 of 7

Attorneys' Fees

Pursuant to counsel's retainer agreement with Plaintiffs, we will be reimbursed for out-of-pocket expenses of **$400** (filing fee) and **$131** (service of process), and will retain 1/3 of the net settlement (i.e., a total of **$6,489.67**) as attorneys' fees.

In total, Plaintiff's counsel expended approximately 30.1 hours in representing Plaintiff, including hours related to the preparation of the settlement agreement and this letter. I am a founding partner of Samuel & Stein. I have practiced law since 1993, have been admitted in the state of New York since 1994, and I focus my practice almost exclusively on wage-and-hour cases, serving as counsel of record in more than 350 such cases. I am admitted to practice in the Southern and Eastern Districts of New York. My time appears in the chart below under "MS." My regular hourly rate for matters such as these is $400. I believe this hourly rate to be commensurate with other practitioners with a similar amount of experience in my locality who represent clients in matters such as this. My associate, Ruchama L. Cohen, has practiced law since 2015, almost exclusively in the wage-and-hour area. She became licensed to work in the State of New York in 2016. She is also admitted to practice in the State of New Jersey, the District of New Jersey, and the Southern and Eastern Districts of New York. Her regular hourly rate is $225. Her time appears on the chart as "RC."

Below is a record of all time spent by Plaintiff's counsel on this matter:

| Date | Attorney | Ledger Description | Hrs/Qty | Rate/@ | Amount |
|---|---|---|---|---|---|
| 03/06/2018 | RC | Revise fairness letter. | 0.3 | $225.00 | $67.50 |
| 03/05/2018 | RC | Call with Elizabeth Toribio (defendants' daughter). (917) 530-8581. | 0.1 | $225.00 | $22.50 |
| 03/02/2018 | RC | Draft letter to Judge Bulsara requesting extension to file settlement papers. | 0.1 | $225.00 | $22.50 |
| 03/02/2018 | RC | Calls with Pilar. | 0.1 | $225.00 | $22.50 |
| 03/01/2018 | RC | Calculate settlement breakdown and draft fairness letter. | 0.6 | $225.00 | $135.00 |
| 02/28/2018 | RC | Review settlement agreement. | 0.2 | $225.00 | $45.00 |
| 02/28/2018 | RC | Call with Pilar; complete consent to magistrate form and draft cover letter. | 0.2 | $225.00 | $45.00 |
| 02/27/2018 | MS | review settlement agreement | 0.4 | $400.00 | $160.00 |
| 02/27/2018 | RC | Draft settlement agreement. | 0.5 | $225.00 | $112.50 |
| 02/12/2018 | RC | Travel to court. | 0.6 | $112.50 | $67.50 |
| 02/12/2018 | RC | Travel from court. | 0.6 | $112.50 | $67.50 |
| 02/12/2018 | RC | Status conference. | 0.4 | $225.00 | $90.00 |

| Date | Attorney | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 01/31/2018 | RC | Draft and file request to enter corporation's default. | 0.6 | $225.00 | $135.00 |
| 12/28/2017 | RC | Call with Pilar Hernandez (646-503-9081). Defendants offer 20k; must respond by Sunday. | 0.1 | $225.00 | $22.50 |
| 12/05/2017 | RC | Status conference. Defense has until 1/5/18 to retain counsel for the corporation. | 0.6 | $225.00 | $135.00 |
| 12/05/2017 | RC | Travel to court. | 0.6 | $112.50 | $67.50 |
| 12/05/2017 | RC | Travel from court. | 0.5 | $112.50 | $56.25 |
| 10/31/2017 | RC | Status conference before Judge Bulsara (no appearance by defense). | 0.5 | $225.00 | $112.50 |
| 10/31/2017 | RC | Travel to court. | 0.5 | $112.50 | $56.25 |
| 06/26/2017 | RC | Status conference. | 1.1 | $225.00 | $247.50 |
| 06/06/2017 | MS | review case file and attend mediation | 3.2 | $400.00 | $1,280.00 |
| 05/30/2017 | MS | review case file and mediation statement | 2.1 | $400.00 | $840.00 |
| 05/30/2017 | RC | Revise pre-mediation statement. | 0.2 | $225.00 | $45.00 |
| 05/26/2017 | RC | Draft pre-mediation statement. | 0.7 | $225.00 | $157.50 |
| 05/24/2017 | RC | Draft letter to Edgar Velez re: mediation. | 0.2 | $225.00 | $45.00 |
| 05/16/2017 | RC | Meet with Juan Lopez and Edgar Velez. | 0.3 | $225.00 | $67.50 |
| 04/26/2017 | RC | Travel to court. | 0.4 | $112.50 | $45.00 |
| 04/26/2017 | RC | Conference with Judge Scanlon, Paul Mendez and Defendants re: defense motion to withdraw as counsel. | 0.8 | $225.00 | $180.00 |
| 04/26/2017 | RC | Travel from court. | 0.5 | $112.50 | $56.25 |
| 04/05/2017 | RC | Travel from court. | 0.5 | $112.50 | $56.25 |
| 04/05/2017 | RC | Status conference with Judge Scanlon and discussions with Phillip Kim. | 0.6 | $225.00 | $135.00 |
| 03/31/2017 | RC | Email Philip and draft letter to Judge Scanlon. | 0.1 | $225.00 | $22.50 |
| 03/30/2017 | RC | Review Defendants' discovery responses (rogs, documents, amended Rule 26). | 0.7 | $225.00 | $157.50 |
| 03/29/2017 | RC | Review joint status letter and email Phillip Kim. | 0.1 | $225.00 | $22.50 |
| 03/28/2017 | RC | Meet with Edgar Velez to discuss discovery responses. | 0.2 | $225.00 | $45.00 |

| Date | Atty | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 03/27/2017 | RC | Finalize responses to requests to admit, and email Jian Hang. | 0.2 | $225.00 | $45.00 |
| 03/27/2017 | RC | Respond to interrogatories and RPDs. | 0.3 | $225.00 | $67.50 |
| 03/23/2017 | RC | Respond to interrogatories. | 0.5 | $225.00 | $112.50 |
| 03/23/2017 | RC | Complete responses to requests to admit. | 0.1 | $225.00 | $22.50 |
| 03/23/2017 | RC | Respond to requests to admit. | 0.1 | $225.00 | $22.50 |
| 03/21/2017 | MS | review draft Request for Production of Documents | 1.2 | $400.00 | $480.00 |
| 03/21/2017 | RC | Respond to RPDs. | 0.6 | $225.00 | $135.00 |
| 03/13/2017 | RC | Format responses to RPDs. | 0.4 | $225.00 | $90.00 |
| 03/13/2017 | RC | Format and respond to Defendants' request to admit. | 0.3 | $225.00 | $67.50 |
| 03/09/2017 | RC | Respond to Defendants' first set of interrogatories. | 0.9 | $225.00 | $202.50 |
| 03/09/2017 | RC | Format Plaintiff's responses to interrogatories. | 0.3 | $225.00 | $67.50 |
| 03/01/2017 | RC | Review Defendants' discovery demands. | 0.3 | $225.00 | $67.50 |
| 02/14/2017 | RC | Draft Plaintiff's First Set of RPDs. | 0.5 | $225.00 | $112.50 |
| 02/14/2017 | RC | Draft Plaintiff's First Set of Interrogatories to Defendants. | 0.3 | $225.00 | $67.50 |
| 01/31/2017 | RC | Draft Rule 26 disclosures. | 0.2 | $225.00 | $45.00 |
| 01/30/2017 | RC | Draft Rule 26 disclosures. | 0.2 | $225.00 | $45.00 |
| 01/20/2017 | RC | Review complaint. | 0.2 | $225.00 | $45.00 |
| 01/20/2017 | RC | Initial conference with Judge Scanlon and William Brown. | 0.3 | $225.00 | $67.50 |
| 01/20/2017 | RC | Travel from court. | 0.5 | $112.50 | $56.25 |
| 01/20/2017 | RC | Travel to court. | 0.5 | $112.50 | $56.25 |
| 01/19/2017 | RC | Review initial scheduling order and Judge Scanlon's rules. | 0.1 | $225.00 | $22.50 |
| 01/19/2017 | RC | Revise damage calculation to add prejudgment interest. | 0.1 | $225.00 | $22.50 |
| 01/12/2017 | RC | Sign, email and review initial scheduling order. | 0.2 | $225.00 | $45.00 |
| 12/29/2016 | RC | Review Answer and scheduling Order. | 0.3 | $225.00 | $67.50 |
| 11/30/2016 | RC | Damage calculation. | 0.6 | $225.00 | $135.00 |
| 11/03/2016 | MS | review complaint | 0.4 | $400.00 | $160.00 |
| 11/03/2016 | RC | Draft complaint. | 1.0 | $225.00 | $225.00 |
| 11/02/2016 | RC | Intake meeting | 0.3 | $225.00 | $67.50 |

**TOTAL:** **$7,465.00**

Notwithstanding the fact that our lodestar calculation is higher than the amount of fees awarded in this settlement, we have a standard retainer agreement with Plaintiff that allows us 1/3 of any possible recovery in this case. Based on our firm's experience in handling FLSA matters, the provision of 1/3 of a settlement is a standard arrangement in this District, and is routinely approved by courts in this Circuit, particularly for attorneys with relevant experience and expertise. *See, e.g.*, *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, at *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a general release of Plaintiff's claims; nor does it contain a confidentiality provision.

Conclusion

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the parties' stipulation of dismissal. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Very truly yours,

/s/ *Michael Samuel*
Michael Samuel, Esq.

Enc.

cc: Reynaldo Toribio (via first-class mail)